1  SETH E. PIERCE (SBN 186576)
   sep@msk.com
2  SHANDA LOWE (278602)
   syl@msk.com
3  MITCHELL SILBERBERG & KNUPP LLP
   2049 Century Park East, 18th Floor
4  Los Angeles, CA 90067-3120
   Telephone: (310) 312-2000
5  Facsimile: (310) 312-3100

6  Attorneys for Defendant
   Universal Television, LLC
7

8                UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM PAVLU, an individual,<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSAL TELEVISION, LLC a New York Limited Liability Company, and DOES 1 through 100, inclusive,<br><br>Defendant. | CASE NO. 2:21-cv-03652<br><br>**DEFENDANT UNIVERSAL TELEVISION, LLC'S NOTICE OF REMOVAL**<br><br>(Removed from Los Angeles Superior Court Case No. 21STCV11744)<br><br>(Diversity Jurisdiction: 28 U.S.C. §§ 1332, 1441, and 1446)<br><br>[Declarations of Seth E. Pierce and Gabriela Kornzweig, Certificate of Interested Parties and Corporate Disclosure Statement Pursuant to FRCP 7.1 and Local Rule 7.1-1, and Civil Cover Sheet filed concurrently herewith] |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF WILLIAM PAVLU AND HIS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT, on this date, based on the allegations of the Complaint of Plaintiff William Pavlu ("Plaintiff"), Defendant Universal Television, LLC ("Defendant") hereby removes the above-entitled action from the Superior Court of the State of California for the County of Los Angeles to the United States District Court for the Central District of California pursuant to 28 U.S.C. Sections 1332(a) and 1441. The removal of this action terminated all proceedings in the Los Angeles Superior Court. *See* 28 U.S.C. § 1446(d). Defendant's removal of this action is proper for the reasons set forth below.

1. On or about March 26, 2021, Plaintiff filed a Complaint entitled *William Pavlu v. Universal Television LLC, and DOES 1 through 100*, Case No. 21STCV11744, in the Superior Court of the State of California for the County of Los Angeles (the "State Court Action").

2. Plaintiff's Complaint alleges the following causes of action against Defendant: (1) Disability Discrimination; (2) Wrongful Termination (FEHA); (3) Wrongful Termination in Violation of Public Policy; and (4) Failure to Reimburse Personal Expenses (Labor Code § 2802).

3. <u>Copies of All Process, Pleadings and Orders:</u> Pursuant to 28 U.S.C. Section 1446(a), copies of all process, pleadings, orders and other papers or exhibits of every kind available to Defendant are attached here, as follows:

- **Exhibit 1:** Summons filed by Plaintiff on March 26, 2021.
- **Exhibit 2:** Civil Case Cover Sheet filed by Plaintiff on March 26, 2021.
- **Exhibit 3**: Complaint filed by Plaintiff on March 26, 2021.

- **Exhibit 4**: All other documents first received by Defendant on March 31, 2021, as follows: (a) First Amended General Order; (b) Voluntary Efficient Litigation Stipulations; (c) Alternative Dispute Resolution Information Packet; and (d) Notice of Case Assignment.

- **Exhibit 5**: Answer filed and served by Defendant on April 28, 2021.

4. Defendant is informed and believes, and thereon alleges, that no "Doe" defendants have been served with a Summons and/or the Complaint in the State Court Action. *See* Declaration of Seth Pierce, filed concurrently herewith ("Pierce Decl.") ¶ 8. Accordingly, this action may be removed by Defendant to federal court pursuant to 28 U.S.C. Section 1441.

### Removal Is Timely

5. This Notice of Removal is being filed within thirty (30) days after service of the Complaint (March 31, 2021) and, therefore, is timely pursuant to 28 U.S.C. Section 1446(b). *Murphy Bros. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 347–48 (1999); *Harper v. Little Caesar Enterprises, Inc.*, Case No. 1801564, 2018 WL 5984841, at *2 (C.D. Cal. Nov. 14, 2018).

### Removal Pursuant to Diversity Jurisdiction

6. This Court has original jurisdiction of this action under 28 U.S.C. Section 1332. This action may be removed to this Court by Defendant pursuant to the provisions of 28 U.S.C. Section 1441(b) because it is a civil action between citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs. Complete diversity of citizenship exists, as described below:

7. <u>Plaintiff's Citizenship</u>. In the Ninth Circuit, the determination of an individual's citizenship involves a number of factors, including the individual's "current residence" and "place of employment." *Lew v. Moss*, 797 F.2d 747, 750

Mitchell Silberberg & Knupp LLP

13131514.1

3

**DEFENDANT UNIVERSAL TELEVISION, LLC'S NOTICE OF REMOVAL**

(9th Cir. 1986); *Martinez v. Michaels*, No. CV 15-02104 MMM, 2015 WL 4337059, at *4 (C.D. Cal. July 15, 2015) (citizenship requirement satisfied where plaintiff "currently live[d] in California and worked for [defendant] in California from 2006 until his termination"); *Christ v. Staples, Inc.*, No. CV 14-07784 MMM, 2015 WL 248075, at *3-4 (C.D. Cal. Jan. 20, 2015) (citizenship requirement satisfied where, *inter alia*, plaintiff "lived and worked in California for approximately fifteen years"); *Carmax Auto Superstores Cal. LLC v. Hernandez*, 94 F. Supp.3d 1078, 1091 n.38 (C.D. Cal. 2015) ("Allegations that a party has an extensive and continuous period of residence and employment in a state are sufficient to establish that the party is a citizen of the state.").

8. Plaintiff alleges that at all relevant times, including the date the State Court Action was filed, he was a resident of the State of California. *See* Complaint, ¶ 4.

9. Furthermore, Plaintiff alleges he worked at Defendant's Southern California location. Complaint, ¶ 5.

10. Based on Plaintiff's stated residences and employment at Defendant's Southern California location, Plaintiff is a citizen of California.

11. Moreover, Plaintiff filed the instant Complaint in the Superior Court of the State of California in Los Angeles County, further availing himself to California's judicial resources and indicating his intent to remain in California. *See* Complaint, *in passim*.

12. <u>Defendant's Citizenship</u>. A limited liability company ("LLC") is a citizen of every state of which its members are citizens. *See, e.g., Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("We . . . join our sister circuits and hold that, like a partnership, an LLC is a citizen of every state of which its owners/members are citizens."). For diversity analysis, it is not relevant where an LLC is incorporated or where it has its principal place of business. *See, e.g., Alatorre v. Wastequip Mfg. Co., LLC*, 2012 WL 6628955, at *4

(E.D. Cal. December 19, 2012) ("LLC's citizenship is . . . determined not by reference to its principal place of business and state of incorporation . . . but by citizenship of its owners and members.").

13. For purposes of removal, diversity of citizenship is determined at the time the action is filed and at the time of removal. *See Strotek Corp. v. Air Transport Ass'n of America,* 300 F.3d 1129, 1131-32 (9th Cir. 2002).

14. Defendant was at the time of filing of this action, and is now, a limited liability company organized under the laws of the State of New York. *See* Declaration of Gabriela Kornzweig, filed concurrently herewith ("Kornzweig Decl.") ¶ 3. The sole member of Universal Television, LLC is NBCUniversal Media, LLC, a limited liability company organized under the laws of the State of Delaware. *Id*.

15. The sole member of NBCUniversal Media, LLC is NBCUniversal, LLC, a limited liability company organized under the laws of the State of Delaware. *Id.* ¶ 4.

16. The members of NBCUniversal, LLC are (i) Comcast Navy Acquisition, LLC, a limited liability company organized under the laws of the state of Delaware; (ii) Comcast Navy Contribution, LLC, a limited liability company organized under the laws of the state of Delaware; (iii) NBCUniversal Enterprise, Inc., which is incorporated in Delaware and has its principal place of business in Philadelphia, Pennsylvania; (iv) Comcast DW Holding, Inc., which is incorporated in Delaware and has its principal place of business in Philadelphia, Pennsylvania; (v) Comcast CCW Holdings, LLC, a limited liability company organized under the laws of the state of Delaware; (vi) Comcast Snap Holdings II, LLC, a limited liability company organized under the laws of the state of Delaware; and (vii) SNL Entertainment Holdings, Inc., a Delaware corporation with its principal place of business in Philadelphia, Pennsylvania. *Id.* ¶ 5.

17. Comcast Corporation is the operating entity for NBCUniversal Enterprise, Inc., and all of its operational, executive, administrative, and policy-making functions, high level officers, and day-to-day operations are conducted at Comcast Corporation's corporate headquarters in Philadelphia, Pennsylvania. *Id.* ¶¶ 6-7.

18. Comcast Corporation is the operating entity for (i) SNL Entertainment Holdings, Inc. and (ii) Comcast DW Holding, Inc., and all of their operational, executive, administrative, and policy-making functions, high level officers, and day-to-day operations are conducted at Comcast Corporation's corporate headquarters in Philadelphia, Pennsylvania. *Id.* ¶ 8.

19. The members of Comcast CCW Holdings, LLC and Comcast Snap Holdings II, LLC are (i) Comcast Navy Acquisition, LLC, and (ii) Comcast Snap Holdings, Inc., a Delaware corporation with its principal place of business in Philadelphia, Pennsylvania. Comcast Corporation is the operating entity for Comcast Snap Holdings, Inc., and all of its operational, executive, administrative, and policy-making functions, high level officers, and day-to-day operations are conducted at its corporate headquarters in Philadelphia, Pennsylvania. *Id.* ¶ 9.

20. The sole member of Comcast Navy Acquisition, LLC is Comcast Corporation. *Id.* ¶ 10.

21. The members of Comcast Navy Contribution, LLC are (i) Comcast SportsNet New England Holdings, LLC, a limited liability company organized under the laws of the state of Delaware; (ii) Comcast SportsNet Philadelphia Holdings, LLC, a limited liability company organized under the laws of the state of Delaware; (iii) Versus Holdings, LLC, a limited liability company organized under the laws of the state of Delaware; (iv) Comcast CHC, LLC, a limited liability company organized under the laws of the state of Delaware; (v) Comcast Contribution Holdings, LLC, a limited liability company organized under the laws

of the state of Delaware; and (vi) E! Holdings, Inc., a Delaware corporation, with its principal place of business in Philadelphia, Pennsylvania. *Id.* ¶ 11.

22. Comcast Corporation is the operating entity for E! Holdings, Inc., and all of its operational, executive, administrative, and policy-making functions, high level officers, and day-to-day operations are conducted at its corporate headquarters in Philadelphia, Pennsylvania. *Id.* ¶¶ 12, 6-7.

23. The members of Comcast SportsNet New England Holdings, LLC are (i) Comcast SportsNet NE Holdings, Inc., a Delaware corporation with its principal place of business in Philadelphia, Pennsylvania; and (ii) CSNNE Partner, LLC, a limited liability company organized under the laws of the state of Delaware. *Id.* ¶¶ 13.

24. Comcast Corporation is the operating entity for Comcast SportsNet NE Holdings, Inc., and all of its operational, executive, administrative and policy-making functions, high level officers, and day-to-day operations are conducted at its corporate headquarters in Philadelphia, Pennsylvania. *Id.* ¶¶ 14, 6-7.

25. The members of Comcast SportsNet Philadelphia Holdings, LLC are (i) Comcast Holdings Corporation, a Pennsylvania corporation with its principal place of business in Pennsylvania; and (ii) Comcast Spectacor Holding Company, LLC, a limited liability company organized under the laws of the state of Delaware. The sole member of Comcast Spectacor Holding Company, LLC is Comcast Holdings Corporation. *Id.* ¶ 15.

26. Comcast Corporation is the operating entity for Comcast Holdings Corporation, and all of its operational, executive, administrative, and policy-making functions, high level officers, and day-to-day operations are conducted at its corporate headquarters in Philadelphia, Pennsylvania. *Id.* ¶¶ 16, 6-7.

27. The members of Versus Holdings, LLC are (i) Comcast Holdings Corporation; and (ii) E! Holdings, Inc. *Id.* ¶17.

28. The sole member of Comcast CHC, LLC is Comcast Holdings Corporation. *Id.* ¶ 18.

29. The sole member of Comcast Contribution Holdings, LLC is Comcast Corporation. *Id.* ¶ 19.

30. The sole member of CSNNE Partner, LLC is Comcast Holdings Corporation. *Id.* ¶ 20.

31. Accordingly, for purposes of determining diversity, Defendant, whose members are organized under the laws of Delaware or Pennsylvania, is regarded as a citizen of Delaware and Pennsylvania.

32. The fictitious defendants named in the Complaint as DOES 1-10 are disregarded for the purposes of removal, in accordance with 28 U.S.C. Section 1441(a).

33. Therefore, Plaintiff and Defendant are citizens of different States.

34. <u>Amount in Controversy</u>. In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint. *See Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp.2d 993, 1001 (C.D. Cal. 2002). The Court must consider all recoverable damages, including liquidated damages, punitive damages, and attorneys' fees authorized by statute. *See Kroske v. US Bank Corp.,* 432 F.3d 976, 980 (9th Cir. 2005).

35. Defendant's notice of removal only needs to include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 554 (2014). The standard for determining whether Defendant meets its burden of establishing the amount in controversy is the preponderance of the evidence. *See Cagle v. C&S Wholesale Grocers, Inc.,* 2014 WL 651923, at *5 (E.D. Cal. Feb. 19, 2014). Under this standard, "the removing party's burden is 'not daunting,' and defendants are not obligated to 'research, state, and prove the plaintiff's claims for damages.'"

Mitchell Silberberg & Knupp LLP

13131514.1

8

DEFENDANT UNIVERSAL TELEVISION, LLC'S NOTICE OF REMOVAL

*Behrazfar v. Unisys Corp.*, 687 F. Supp.2d 999, 1004 (C.D. Cal. 2009) (quoting *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp.2d 1199, 1204-05 (E.D. Cal. 2008)). When a "[d]efendant's calculations [are] relatively conservative, made in good faith, and based on evidence wherever possible," the court may find that the "[d]efendant has established by a preponderance of the evidence that the amount in controversy" is met. *Id.* (internal citations omitted).

36. Here, the Court can reasonably ascertain from Plaintiff's complaint and his prayer for relief that the amount in controversy exceeds $75,000. Plaintiff seeks, among other things, "compensatory damages," "special damages," "general damages," "punitive or exemplary damages," and "attorneys' fees." Prayer For Relief, ¶¶ 50-53. Without admitting the validity of Plaintiff's four (4) causes of action (all of which are expressly denied by Defendant), the amount in controversy is in excess of $75,000, exclusive of interest and costs. Defendant meets its burden based on the following:

37. <u>Economic Damages</u>: The complaint alleges that "Plaintiff has suffered and continues to suffer… loss of earning and benefits, plus expenses incurred in obtaining substitute employment and not being regularly employed…" Complaint, ¶¶ 21, 28, and 38. Plaintiff further alleges that the damages in his Complaint "far exceed $25,000." Complaint, ¶ 48.

38. Plaintiff worked as Chief Rigging Technician for Season 1 of the television series "Hacks." Complaint, ¶ 8. Plaintiff alleges that on December 7, 2020, he took a medical leave of absence after testing positive for COVID-19. Complaint, ¶ 9. Plaintiff further alleges that on December 14, 2020, Defendant wrongfully terminated his employment for having COVID and taking a COVID-related disability leave. Complaint, ¶ 11.

39. In establishing that the amount in controversy likely exceeds the jurisdictional minimum, a defendant is permitted to calculate the likely back pay award from the date of the termination until the date of likely judgment. *See*

*Garcia v. ACE Cash Express, Inc.*, 2014 WL 2468344, *4 (C.D. Cal. May 30, 2014) (it was proper for the defendant to calculate back pay at issue by calculating wages in "months between termination and removal…and adding wages for the estimated time between removal and trial"); *James v. Childtime Childcare, Inc.*, 2007 WL 1589543, *2, n.1 (E.D. Cal. Jun 1, 2007) (Plaintiffs "erroneously assumes that the court includes only those wages lost before removal when calculating the amount in controversy. The court evaluates the amount in controversy at the time of removal, but it may consider both past and future lost wages.").

40. Here, as of the most recent reported data in September 2020, the median time from the filing of a complaint until trial in the Central District of California is 20 months. See United States Courts Statistics, https://www.uscourts.gov/statistics-reports/federal-court-management-statistics-september-2020. With a removal of April 30, 2021, that would mean an estimated trial date in September 2022. At Plaintiff's hourly rate, working full time plus overtime, Plaintiff's back pay claim from December 2020 through December 2022 would plainly exceed $75,000.

41. For his Fourth Cause of Action, Plaintiff seeks the "reasonable value of Plaintiff's tools" which he alleges to be approximately $10,300.

42. Accordingly, Plaintiff's claims for lost wages and reimbursement alone likely exceed $75,000.

43. <u>Emotional Distress.</u> Plaintiff also alleges emotional distress damages. Plaintiff alleges that "[a]s a direct, foreseeable, and proximate result of the actions of Defendants, Plaintiff suffered, and continues to suffer, severe emotional distress..." Complaint, ¶ 21; *see also* Complaint, ¶¶ 28 and 38.

44. "To establish the amount of emotional distress in controversy, a defendant may introduce evidence of jury verdicts in other cases." *Cain v. Hartford Life and Acc. Ins. Co.*, 890 F. Supp. 2d 1246, 1250 (C.D. Cal. 2012).

Jury verdicts in employment discrimination cases make clear that emotional distress is frequently awarded in an amount at least twice the underlying economic damages, or, at the very least, in the same amount as economic damages. *See Saccio v. Romasanta*, 2016 WL 7118673 Case No. 15CV00672, Superior Court, Santa Barbara County (November 22, 2016) (in age discrimination action, jury awards $75,000 in non-economic damages, but less than $70,000 in economic damages); *Abe v. Symantec Corporation*, 2016 WL 6883223 Case No. BC547652, Superior Court, Los Angeles County (July 22, 2016) (verdict in pregnancy, gender and disability discrimination case for $50,000 in "pain and suffering," but only $25,003 in back-pay); *Swinton v. Potomac Corp.*, 270 F.3d 794, 799 (9th Cir. 2001) (affirming award of $30,000 in emotional distress damages in employment discrimination case where back pay was only $5,612); *Escoto v. Metric Machining*, 2013 WL 9554716, Case No. CIVRS-12-06532, Superior Court, San Bernardino County (Nov. 14, 2013) (verdict in wrongful termination, disability discrimination, failure to accommodate, failure to engage in interactive process, and age discrimination case for $55,000 in "pain and suffering," but only $12,000 in back pay); *Izaguirre v. International Coffee & Tea LLC*, 2013 WL 6624243, Case No. BC486877, Superior Court, Los Angeles County (Sept. 26, 2013) (verdict in wrongful termination, disability discrimination, failure to accommodate, failure to engage in interactive process, and retaliation case for $80,000 in "noneconomic damages," but only $40,000 in economic damages); *Cho v. B & B Pharmacy and Healthcare Center*, 2011 WL 8227178, Case No. VC055584, Superior Court, Los Angeles County (July 13, 2011) (verdict in wrongful termination, pregnancy discrimination, and harassment case for $75,000 in "noneconomic loss," but only $37,500 in economic damages); *Husein v. Selma Unified School District*, 2010 WL 8672016, Case No. 08CECG03528, Superior Court, Fresno County (Oct. 26, 2010) (verdict in wrongful termination and racial discrimination case for $110,000 in past and future "noneconomic damages," but about $70,000 in economic damages);

*Perona v. Time Warner Cable, Inc.*, 2016 WL 6440427, Case No. 5:14CV02501, Central District of California (Sept. 8, 2016) (verdict in disability discrimination and failure to accommodate case for $80,000 in "noneconomic damages," and $80,000 in economic damages).

45. <u>Attorneys' Fees</u>. Plaintiff seeks attorneys' fees authorized by Code of Civil Procedure section 1021.5 and Government Code 12965(b). Complaint, Prayer for Relief; *see also* Complaint, ¶ 41. Accordingly, those fees may be considered when determining the amount in controversy. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy"); *Brady v. Mercedes-Benz USA, Inc.,* 243 F. Supp. 2d 1004, 1010-1011 (N.D. Cal. 2002) ("Where the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred through resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount in controversy."). While Plaintiffs' attorneys' fees cannot be precisely calculated from the face of the Complaint, it is reasonable to assume that the amount of attorneys' fees Plaintiffs could incur in the course of this matter may exceed a damages award. *Simmons v. PCR Technology*, 209 F.Supp.2d 1029, 1035 (C.D. Cal. 2002).

46. Even an overly conservative $50,000 estimate for Plaintiffs' attorneys' fees in this matter would be sufficient to surpass the jurisdictional limit when added to Plaintiff's economic damages.

47. <u>Punitive Damages.</u>  Plaintiff also expressly seeks to recover punitive damages.  Complaint, Prayer for Relief; *see also* Complaint, ¶¶ 22-23, 29-30, and 39-40.

48. The Court must take into account punitive damages for purposes of determining the amount in controversy where such damages are recoverable under

state law. *Davenport v. Mutual Benefit Health and Accident Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963); *Brady*, 43 F.Supp.2d at 1009. California law does not provide any specific monetary limit on the amount of punitive damages that may be awarded under Civil Code § 3294. *Boyle v. Lorimar Productions, Inc.*, 13 F.3d 1357, 1360 (9th Cir. 1994). A punitive damages award may equal as much as four times the amount of the actual damages award. *State Farm Mutual Auto Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003); *see also Simmons v. PCR Technology*, 209 F.Supp.2d 1029 (N.D. Cal. 2002) (citing jury verdicts in which the punitive damages awards ranged from $60,000 to $121,000,000).

49. Plaintiff also seeks open-ended relief in the form of "all other relief [the] Court deems proper." Although uncertain in amount, this additional damages claim only serves to increase the amount in controversy. *See Lewis v. Exxon Mobil Corp.*, 348 F.Supp.2d 932, 932-934 (W.D. Tenn. 2004) (the "open ended" relief sought by plaintiff, who prayed for "judgment to be determined by a jury, for all incidental, consequential, compensatory and punitive damages" established that her case met the amount in controversy requirement even though he pled in the complaint that he did not assert a claim in excess of $75,000.)

50. Defendant denies that Plaintiff's claims have any merit. Defendant also denies that Plaintiffs suffered any damages. However, when the relief sought (i.e., back pay, front pay, emotional distress, attorneys' fees, and punitive damages) is taken as a whole, the amount in controversy for Plaintiff's claims exceeds the $75,000 jurisdiction requirement, exclusive of interest and costs.

51. Based upon the foregoing, the amount in controversy in this matter far exceeds the jurisdictional minimum of $75,000. Accordingly, this action is a civil action over which this Court has original jurisdiction pursuant to 28 U.S.C. Section 1332, and which may be removed to this Court by Defendant pursuant to 28 U.S.C. Section 1441 based on diversity jurisdiction.

**Venue**

52. Removal to this Court is proper under 28 U.S.C. Section 1441 because the Complaint was filed in the Superior Court of the State of California for the County of Los Angeles, and this U.S. District Court for the Central District of California Western Division is the U.S. District Court for the district and division within which this action is pending.

53. A copy of this Notice of Removal will be filed with the Superior Court of the State of California for the County of Los Angeles and served upon all adverse parties as required by 28 U.S.C. Section 1446(d), and an appropriate notice of compliance with 28 U.S.C. Section 1446(d) also shall be served and filed in the above-entitled Court.

WHEREFORE, Defendant Universal Television, LLC respectfully requests that this action be removed from the Superior Court of the State of California for the County of Los Angeles, to the above-entitled Court.

DATED: APRIL 29, 2021         SETH E. PIERCE
                              SHANDA LOWE
                              MITCHELL SILBERBERG & KNUPP LLP

                              By: /s/ Seth E. Pierce
                                  Seth E. Pierce (SBN 186576)
                                  Shanda Lowe (278602)
                                  Attorneys for Defendant
                                  Universal Television, LLC